Mr. Clerk, will you call the next case, please? 312-0166, American Chartered Bank, $580,000, v. Michael and Sandra Brdecka, accounts, Wayne. Uh, GM... GM and... Mr. Jim Petro. Afternoon, Your Honors. Good afternoon. May it please the Court, Counsel. My name is Wayne GM Petro. I represent Mr. and Mrs. Michael Brdecka in this case. Case is a foreclosure case. American Chartered Bank filed a foreclosure suit over real estate that Mr. and Mrs. Brdecka were living in. They didn't name the Brdeckas. They found out about it, that the foreclosure suit was pending, and they hired an attorney, and they sought leave to intervene in the case so that they could present to the Court the issues regarding who really owned the property and whether this foreclosure was appropriate enough. On the day that their motion to intervene was to be heard, their attorney, who, by the way, had never entered an appearance on their behalf, stepped up to the Court and said, I can't represent these people. I represent both the Brdeckas and another defendant in the case, Mr. Keeley. There's a conflict of interest between those parties. I cannot represent anyone. And he asked leave to withdraw. The Brdeckas were given leave to intervene, and they were given 28 days within which to get an attorney or file an appearance on their behalf because Mr. Bashaw, who was there on their behalf, said he couldn't represent them. However, oh, and Mr. Bashaw also said that there had been a quitclaim deed made to the real estate in which they lived without their knowledge or consent. He then said, but I can't represent any of the defendants here. I'm asking leave to withdraw. And, oh, by the way, the Brdeckas don't mind if you hold them in default. So on the very day that they were given leave to appear in the case and given 28 days within which to take some action on their behalf in their defense, they were held in default. There was no motion for default pending. There was no motion for default ever filed in the case. And they were foreclosed of all rights on the very same day that they were given leave to get involved in a case that had to do with their home. The order of foreclosure and sale, which was entered that same day, had so many errors and false statements in it, they're almost uncountable. First of all, it said the real estate was not residential property. It is residential property. It said that the property was in Cook County. It's not in Cook County. It's in Will County. It's a whole number of other. Oh, it said that the note that was the basis of the foreclosure was given to some other company, community investment property or something that wasn't even a party to the case and wasn't involved in the proceeding whatsoever. Within 30 days, the Bredekas made a motion to vacate the default. It was denied innocence summarily, even though it was patent on the face of it that the person who had agreed to let them be held in default had absolutely no authority and no ability to take that action on their behalf. The rules of professional conduct make it absolutely clear that an attorney who has a conflict of interest cannot represent a party, much less give their rights away. But that's what the circuit court held happened. The Bredekas made seriato motions to vacate, seriato motions for leave to enter into the case and to appear and defend against the case, including proffers that showed the deed to this Dundee Partners, who had gotten the loan from American Charter, which was the basis of the foreclosure suit, that the deed to that entity was a forgery, was not true, that Sandra Bredeka's name had been forged to that document. Yet at every time, at every instance, the court said, well, hey, look, your attorney agreed to the default against you. That's all there is. There's nothing to it. That's not right. It's a violation of due process. It is clearly contrary to the rules. And in the most recent pronouncement by the Illinois Supreme Court, in In Re Haley D, it said, when you consider a motion to vacate a default in a situation such as this, the overriding consideration is whether or not substantial justice is being done between litigants. Is it reasonable to compel the bank to prove up the things that it's alleging here? Mainly that it has some right to seek to get this property, in essence, because the documents that the bank proffered to the court and the court entered said, kick these people out of their home. Evict them. On the day that the fault was entered, had the lawyer entered in an appearance? Nope. Well, then, so he wasn't their lawyer legally. He filed, well, that's true, your honor. He filed a motion for them to intervene. And I suppose there are some cases that might say, well, even though he didn't file an appearance as such, filing the motion on their behalf is tantamount to an appearance, but he did file that plea. Okay, all right. But he never filed an appearance as such. And he never did anything beyond filing the motion for leaves to intervene, because that's at the point he said, I have a conflict. I can't represent these people. Does anyone report to say that they were ever an attorney for the Sandra Burdecka Trust? No. And was that trust, was anyone for the trust ever served? Nope. Were they named at all in the foreclosure? Nope. And that is the owner, correct, of the property? Well, that's the owner. The purported quitclaim deed to these Dundee advisors was purportedly by Mrs. Burdecka as trustee of the trust to Dundee Partners. That's the document that the Burdeckas presented evidence to the court as a forgery. And Mr. Bashaw also was the attorney for? Mr. Keeley. Mr. Keeley. Who was also one of the parties involved in this Dundee partnership, or Dundee properties that obtained the loan from the bank. That was the basis of the whole foreclosure suit. And only Mr. Burdecka was present in court on the day of the, what was to be the hearing on the motion to intervene. Motion to intervene, right, you're right. And his initials, do they appear anywhere on the agreed order? No. No, somebody, and I don't know whose handwriting it is, but somebody wrote the name Michael and Sandra Burdecka into the order of foreclosure and sale. Apparently it had been prepared prior to that. Their names were written into that order apparently that day before it was entered. And it's that document. Typewritten or handwritten? I'm sorry, you're right. Handwritten or typewritten? Handwritten. Handwritten. If I hire a lawyer and he's just really bad and messes up my case, do I get to have the case undone or do I have to, if I'm damaged, sue the lawyer for malpractice? Well, Your Honor, depending upon the circumstances, maybe both. I mean, clearly I would think that the Burdeckas probably do have a valid malpractice case against Mr. Bashoff, but he didn't have the authority to bind them to anything. And so for the purposes of this case, he had no standing whatsoever to enter into any kind of an agreement on behalf of people he had no right to represent. And that's the issue here because the order entered by the court says evict Mr. and Mrs. Burdecka from their house, and that's the only right they got. The day they sought leave to intervene to defend themselves was the right to pay off the debt that had been obtained by these interlopers and the forgers of this deal. That's not much in the way of rights, Judge, because they never got any of that money. They never knew about it. They never had anything to do with that transaction. So Mr. Bashoff not only said hold them in default, he in essence said make them liable for what these other people had done, and he had absolutely no authority to do that. Well, they hired him and filed a motion to intervene on their part. Well, these other people involved in this thing also used to be the Burdeckas' lawyers as well, Your Honor. The people that wrote the deed that we claim is forged also were prior attorneys for Mr. and Mrs. Burdecka. I don't think at that stage of the proceeding, when they're just finding out that there's something going on here, that it would be reasonable to say they ought to be on notice of something, anything, when the people that are doing all this stuff that get them into this mess are the people that had been their attorneys and that they had relied on and trusted up until now. And if nothing else, it's a tribal issue. Is that the same attorney we're talking about, Bashoff? No, no. It's Keeley and Walsh. Keeley was one of the other defendants. Walsh was also a defendant. They're attorneys? Yes. They're both attorneys. They were the ones involved with this Dundee partnership. Bashoff represents both Keeley and the Burdeckas, and he says, you know, there's this forged... I didn't realize they were attorneys. Yeah, they're attorneys, Your Honor. Yes, indeed. And all I'm saying at this point, Your Honor, is when these issues are presented to the circuit court, you've got to have a hearing to sort out what the facts are and give the Burdeckas an opportunity to prove that their property in essence is being stolen from them and that the bank really doesn't have any claim to this real estate. Given this kind of allegation with the support that was provided to the court, it seems to me that it's a very basic violation of due process not to hold a hearing to find out what in fact went on and what the actual facts are. And I can't see any basis for the trial court refusing to so much as hold a hearing to find out what was going on. And all he kept saying is, well, look, your lawyer at the time said it was okay, and that's it. I'm not looking into anything else. He didn't even apparently realize or acknowledge that the attorney couldn't represent them and couldn't find them in any way. So we're asking that the orders below be set aside, that the Burdeckas be given leave to file their appearance, and that the case proceed on the merits, that they be given an opportunity to file an answer and to proceed. That's what justice would require in this case. Unless there are any other questions, that's all I have. Thank you. Thank you. Thank you. And Mr. Oldsway?  Good afternoon, Your Honors. May it please the Court, Counsel. I have a lot of ground to cover, it seems like, after Counsel spoke, so I'll get right to it. This foreclosure was filed on behalf of American Chartered Bank in August of 2010. We filed it against the title holder, which at the time was Dundee Advisors. We ordered title like we would normally do in a foreclosure. The title came back that Dundee Advisors was the title holder. That's who we named. It was a two-count complaint. The second count was against Mr. Keeley because of his guarantee. This was a commercial transaction, so in a commercial transaction, there's usually a waiver of the redemption right, as opposed to a consumer transaction where they would have a certain statutory redemption right. So we moved along. We served the parties in the case. On November 3rd, we appeared in court to move for judgment of foreclosure and sale. At that time, Mr. Bashtaw came to court for the first time. He came to court on behalf of the Burdekas. He asked for time to file a petition to intervene. He was granted time. The case was sent over to December 22nd of 2010 for status. On December 22nd, 2010, Mr. Bashtaw again came to court on behalf of the Burdekas, the second time in court now. By that point, he had already filed his petition to intervene, so the judge set it for hearing on February 9th of 2011. At that time, the day it was presented, Mr. Burdeka was in court, Mr. Bashtaw was in court, and if I may read a few sentences from the transcript of that day, I think it's very clear what was going on here. Mr. Bashtaw says to the court, so Mr. and Mrs. Burdeka asked leave to intervene so that it could be determined that they have a right of redemption. As I previously mentioned, it was a commercial transaction, so there would be no right of redemption. He goes on further to say, Mr. Bashtaw, that counsel and I and Mr. Burdeka have discussed this matter this morning. Given those circumstances, Mr. and Mrs. Burdeka have no objection to the entry of the judgment, provided that the judgment indicates that they have a right of redemption as the owners of the property. We objected, saying that it was a commercial transaction, they're not the owners of the property, but over our objection, the judge granted them a right of redemption of this property. Mr. Bashtaw then marked off the judgment. He marked off the order of default. He added their names in here. Both the agreed judgment of foreclosure and sale and the agreed order of default were entered that day. Was all that done after his disclosure that he had a conflict of interest with the other defendants? He didn't represent anyone else in this case at that time. I think counsel kind of alluded that he represented Mr. Keeley, but he didn't in this case. The only people that he had ever appeared for on three occasions was the Burdekas. He alludes to it. He states he has a conflict of interest. Yes, he did. He set for that same day a motion to withdraw. There were two motions pending that day. So the motion to withdraw was on file at the time that this order was entered. Yes. So he says, I represent more than one person, and as a matter of fact, I can't. Well, he says he has a conflict. He doesn't say that he represents more than one person. He says he has a conflict and he can no longer represent the Burdekas. And yet, he says his conflict can't be disclosed because it is a matter of attorney-client privilege, and yet he comes in, he says he can't represent them, and that's exactly what he does. Well, but he negotiated, but when he had filed this petition, as he claimed, as attorney for the Burdekas, he filed the petition so they can get a right of redemption because without the right of redemption, this property could have gone to sale, and ultimately it did, but it could have gone to sale pretty quickly is what would have happened. So the Burdekas wanted to protect that, and the Burdekas wanted to, you know, the Burdekas, there's statements in these various motions, and there's a lot of motions that were filed in this case, amended motions and motions, in this case that suggests that, and states that Mrs. Burdekas thought that Dundee Advisors was going to pay this loan off from another deal. She was aware that this existed. She was aware that this loan was out there, but she thought that Dundee Advisors somehow had, they had another litigation that was pending against someone that was going to pay our loan, my client's loan off, ultimately. So they were aware of it, they knew what was going on, and so that morning that judgment was entered, they negotiated this right of redemption so they can get this paid off, thinking that this other lawsuit, whatever it was, was going to be resolved. You keep talking about Mrs. Burdekas was aware, she wasn't in court, was she? No, she was not in court. So how could she be aware of an agreement that gets made in a courtroom that she's not in? I'm not saying she was aware of the agreement, I'm saying she was aware that the mortgage... But to have an agreed order, doesn't she have to be aware of the agreement? Well, but Mr. Burdekas was in court. Can she bind, can he bind her? Your Honor, it's the attorney that bound them. They entrusted him to represent them, and they entrusted he would look out for their best interest. They negotiated in the hallway, outside of the courtroom, this negotiation went on. Mr. Burdekas was standing there. The judge even asked him at some point if he agrees to withdraw. After the judgment was entered, after Mr. Batchel went through the whole discussion. After his disclosure, it troubles me, I guess, that he says this, then goes on for however long it took to negotiate this and get at least Robert's signature on the stipulation. And then withdraws formally. Again, the court asked that poignant question a few moments ago, is that malpractice or should we undo this whole case because of that? I mean, had he objected, Mr. Burdekas, he was standing in court, he could have said, you know, that's not my agreement, I don't want the judgment of proposal entered, and objected to it, and not agreed to it, and not let an order of default be entered. I mean, he was standing there. It wasn't as if he was not there and they had talked previously. This is what they entrusted him as their lawyer to do. That's what Mr. Batchel states in court, that they wanted the right of redemption. And that's why they filed this petition to intervene. That's ultimately what the judge gave them as part of this agreed judgment of foreclosure. Mr. Batchel even states, we've prepared a judgment that inserts the Burdekas. I mean, he had wrote these changes to the judgment of foreclosure in at the time. Mr. Burdekas was there the whole time. And then Mr. Burdekas goes on and files a motion to vacate. The motion to vacate is somewhat astonishing because two of the main allegations in the motion are completely false, saying that he was unable to appear on the court date, for one, and that he has a meritorious defense. He never sets forth what the defense is. He never sets forth what the base of his defense. So the judge was absolutely correct in the abusive discretion in denying it, saying you agreed, you were here at the last court date, you agreed to entry of the judgment of foreclosure in the order of default against you. How can I now undo that? You're not saying what your defense is, if any defense, and he's just making these bold allegations that he was unable to appear. Without counsel stands here, and he says, for the Burdekas, it's saying that he had no authority, Mr. Batshaw. That's just a conclusory statement that counsel's making. There's nothing. There's no authority. There's no case law. There's no facts and evidence. There's nothing that's ever been put in this record that shows he didn't have the authority. Not a single thing. I mean, we have to assume that they had retained him as counsel, they entrusted him with the authority to act on their behalf, he acted on their behalf, and now they're saying that he didn't have the authority. But where is the proof? Where's the facts? Where's anything before this court or in the record that says that he did not actually have the authority to enter it? That's somewhat put aside by the fact that Mr. Burdekas stood there. And Mr. Burdekas was in court. Mr. Burdekas let the agreed judgment get entered. How can they then say he didn't have authority to do it? That somewhat baffles me that after the fact, of course, they're saying that now. Agreed orders. Isn't that why you have a hearing on a motion to reconsider is because what may appear to be very cut and dried at the time, at the center or on the face, that maybe would not be so cut and dried if they were allowed to produce their evidence that, in fact, they hadn't agreed to this. That this was not what they knew. I mean, you said that Mrs. Burdekas knew that there was this outstanding loan, but we find out later that the acquit claim deed was forged. So that perhaps she knew that there was some loan or some debt, but didn't realize that the home she was living in, the ownership of it, had been transferred to someone else. Those are the types of things that I think opposing counsel is saying should have been fully vetted in front of the trial court and they should have been allowed to present that information. Are you saying that none of that would have mattered? Well, but I'm saying if we look at the fundamental, what is an agreed order? I mean, if we're going to start disturbing agreed orders that are negotiated and entered into by two opposing counsel, then what's the point of having an agreed order, I guess, at the end of the day? If they can't be trusted, if they can't be found to be in a contractual agreement, what else can we do then? I mean, what's the point of having an agreed order? I mean, if we can go in and say, well, it was agreed, but we didn't really agree to it and we don't think it's right and now we have these defenses, why agree to it in the first place? I mean, I think that throws somewhat of a wrench into the whole process and the whole legal system by saying that agreed orders don't really have the enforceability that we think they do and that the courts have found our contractual agreements and the full force of agreed orders throughout history. Aren't they saying that it wasn't really an agreed order, that it's void or voidable or whatever because the attorney already had announced that he had a conflict? I mean, how long can you say, ethically, how long can an attorney say I have a conflict that can't represent you? How long can he continue to represent them? If there's a hearing in six months, can he still represent them? Well, but it was all simultaneous. I mean, it was all the same day. It wasn't like a long period had elapsed. I understand that, and that's my question. So here it happened in a half an hour period or whatever. And he continued to represent them. I think that's what they're saying. That's my understanding of what they're saying is that if the order itself isn't standing on all four corners, isn't standing on its own two legs, is it a stipulated order? Well, but... I mean, is it an agreed order that was negotiated by an attorney who had no right to do that? No. Sorry. No, I have a follow-up question. Go ahead and answer his question. Okay. Well, if their true intention was to get this redemption, this right of redemption, in order to... I should just back up one second because I think counsel somewhat mischaracterized a little bit about this judgment of foreclosure and that it gave us the right to evict them. That's not what the judgment of foreclosure says. Later on, if in an order of proving sale, we would get the right to evict them. So that wasn't exactly happening. It's somewhat mischaracterized. But in any event, you know, knowing that there was this mortgage out there, knowing that there was this relationship with Dundee Advisors, and knowing that there was this other lawsuit out there that was supposedly going to pay this off... And mind you, this loan, it wasn't like it was a new loan. I mean, the loan was three years old at that point. It wasn't as if this was, you know, a couple months old and all of a sudden we're foreclosing. It was a mortgage that had been pending against the property for, you know, quite some time by the time we ended up foreclosing it. Had any payments been made on it? Yes. By whom? I would assume by Dundee Advisors who made the payments. As far as we were concerned, they were the titleholder. And Mr. Keeley was just the guarantor. So I believe it was Dundee Advisors. I can't say who the checks were from exactly, but assuming it was Dundee Advisors. So, you know, that day that he came into a draw, it wasn't as if he had appeared in court. That was the third time now he had appeared in court. He had this petition to intervene, which was in essence, you know, trying to buy this time for them. So, you know, knowing that they had this mortgage out there, this other lawsuit, and to give them that. And the judge gave them a right of redemption seven months from the filing of the petition, which is unusual, but usually it's based upon service or the date of judgment, whichever. So it was kind of an unusual thing. The judge said, I'll give you five months, because it had been about two months since the petition had been filed. And he gave them all this time to get something accomplished in this. I don't, you know, the... I'm sorry, go ahead. I understand. Well, I just want to get... I want to address... I have a question. You said, you know, we can't go around, you know, undoing agreed orders that have been negotiated between two lawyers. But in this situation, didn't your client... I mean, you objected to the entry of this judgment for foreclosure. I objected to the giving of redemption rights. But, which was all... The part that you're saying now, they should not be allowed to go back on, that's all you're saying that Mr. Bashaw was doing for them, was giving them this right of redemption. And your client didn't want that, so that... I just couldn't... I couldn't agree to it, is what I said. Well, but you did. I mean, that's... You did, but you objected. So it wasn't entered in the nature of an agreed order between your client and Mr. Bashaw's client. It was entered over the objection of your client. So you didn't want this order. Well, the order of default was entered as agreed. We didn't object to the order of default. But it's all together. Well, right, but I'm saying... It's one... So what I'm saying is for the... You're saying that we can't be in the business as a matter of public policy of undoing agreed orders. But do you recognize that this is not exactly the type of agreed order that we... Well, but it was agreement to entry of the judgment of foreclosure and sale. That's what it was. And if the judge decided that there was going to be no redemption period, that judgment would have been entered without the redemption, the right of redemption. Well, you don't know that, because you don't know that then they would have agreed. I suppose that's true. So the agreement that you're talking about in agreed orders when two parties agree to all the same terms. But in this situation, even if you can show that as a matter of public policy, this wasn't something where everybody agreed to all of the same things. Well, I suppose the one issue is the right of redemption. And Mr. Bachelet was very clear in the record. He said the only question... He said that we have an agreed judgment, but the only question that counsel and I absolutely can't agree on is the right of redemption. So, yes, it was a question of whether they would give it or not give it. Of course, because we took the position it was a commercial mortgage, they weren't entitled to it. Mr. Bachelet took the position that this is what we were trying to accomplish for them, and that's what he ultimately got from the court judge. Sorry, I'm running a long time. When I went in to review the record in preparation for today, I was amazed with the amount of attorneys that were coming and going in this case, the amount of motions to vacate, motions to reconsider. But at the end of the day, a couple things. Where do we see that the trial judge committed an abuse of discretion? We don't see that here. What he did was he took the word of two counsels that were standing there that had agreed but for the one term that the judgment and then the order of default be entered. Once the order of default was entered, the defendants in essence, sorry, the appellants, in essence admit the allegations contained in the complaint. They had intervened, they were found in default, and therefore they're admitting the allegation in the complaint. The one allegation in the complaint which seems to be objected to and questioned later on is who's the title holder of the property. Well, our position is they waived the right to make that argument. And I think the trial court took that position well. You waived it. You've now been defaulted. You've taken as true the allegations in the complaint. The allegation in the complaint as to who the present owner of the real estate was is now the advisors. So how can they now go on in a petition to reconsider or a petition to vacate and say, oh, no, that's not really the title holder. It was a forgery. Here's a report of a handwriting expert, which by the way, it doesn't even state what document was reviewed. It just states a signature was reviewed. It doesn't say the actual document that was reviewed. Thank you very much. I'll finish my thought. But at the end of the day, we truly believe that there was no abuse of discretion. The agreed judgment of foreclosure and order of default should stand as well as the denials of the various motions that went on from March of 2011 through February of 2012. I do have a quick question. Sure. Were there any other liens on this property that we know of at this time? No. Oh, I shouldn't say that. There was a first mortgage on the property. But because we can't impact, the council made an issue of this at some point in one of the briefs I saw. We don't name that ever when we're a second lien holder. We're subject to being a motion to dismiss for sure because we can't impact their first lien position. So we never named first lien holders. You didn't buy them out? No. No, no, no.  But we would take subject to the first. All right. Thank you. Thank you. Mr. Jim Petra. The problem with counsel's argument is most of the stuff he's talking about isn't in the record. That's why you need to hear it. He's talking about what went on in the hallway and who said what to who. There's nothing in the record that supports that. Absolutely nothing. Mrs. Burdecka wasn't there. She, as trustee of the Sandra Burdecka Trust, is the real owner of this property. She had nothing to do with any of these proceedings. That's why you need to have a hearing and get the witnesses on the stand and testify under oath. Why wasn't she there at that hearing? Because, as I understand it, and again, that's why we need a hearing, but she thought all we're doing is getting leave to intervene so that then we can then respond to this complaint. That's all that was up that day was the petition to intervene. This motion for default wasn't to be heard that day. She had no reason to believe she should be there. Rule 1.7 of the Illinois Rules of Professional Conduct says, a lawyer shall not represent a client if the representation involves a current conflict of interest. The court should have known that. The court should have known that Mr. Bashaw, the minute he said he had a conflict, could not do anything to bind to Burdecka's. As a matter of law, counsel says there's nothing in the record to support that. Well, that doesn't mean legally that what he does is void. It just means that if he doesn't, he's going to be answering with his license, probably. It's void. That's the point. When Mr. Burdecka and Mrs. Burdecka then make the motion to vacate and bring to the attention to the court that this so-called agreement was void because the person who made it on their behalf had no authority and as a matter of law was prohibited from making that agreement, that's when you've got to vacate the default order, hold a hearing, and find out on the record under oath what the true facts are regarding this case. I guess the question Judge Schmidt has, I'm sure you'll correct me if I'm wrong, but is does the ethical violation have an impact on the proceeding? Or how does it have an impact on the proceeding? Well, the judge is a lawyer. It would seem to me that he ought to know what the ethical requirements are and that he knows that the lawyer cannot bind his client once he says he has a conflict. How can the court say you are bound by what somebody says who he knows or should know cannot represent that party? I mean, these rules are there for a reason. And the reason is that people who have a special relationship to the legal process are held to a higher standard and the court's got to know that. Well, but by way of example, there are also every once in a while, you know, unfortunately a few terribly incompetent lawyers who go out and take a client's case that would be a good case and screw it up beyond repair. And so that's an ethical violation also. And yet that doesn't mean that the case gets undone. It means maybe there's an action against that lawyer for whatever damages they might have recovered had he been reasonably competent, right? Right. But here it was brought to the court's attention immediately, within 30 days, that this agreement was not the agreement of the parties and the court did nothing. This is the kind of thing where just basic due process says you've got to have a hearing once these kinds of allegations are made. And they're brought in a timely manner, in a proper manner, and there is no excuse for not at least having a hearing to flesh these things out and find out what in fact are the true facts. That's just the bedrock of our entire legal system is that people have an opportunity to be heard at a proper time in a proper place. And that's all the Bredekas have ever been asking is that they be given their basic due process right. Not that the day on which they're given leave to enter a case, to defend it, they're held in default. Well, but Mr. Bredeka was there. He didn't object to the default. He wasn't asked about the default. He was asked, do you object to Mr. Bashaw withdrawing? And he said no. He did not say anything affirmatively one way or the other about the default. Maybe he didn't know, but that's the whole point. That's why we need a hearing. What did he know? Who said what to who? What in fact went on? And that's the only proper orderly way to deal with these things. Unless there are questions around it, that's my presentation. Okay, well, thank you very much. Thank you. Thank you both very much for your presentations today. We will take this matter under advisement. Thank you. With a written disposition within a short time. We'll now take a short recess for a panel session.